**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| ST. PHILIP NERI CATHOLIC CHURCH, INDIANAPOLIS, INC., and ROMAN CATHOLIC ARCHDIOCESE OF INDIANAPOLIS PROPERTIES, INC., | Case No. 1:25-cv-2616-MPB-TAB |
| Plaintiffs, | |
| v. | |
| INDIANAPOLIS HISTORIC PRESERVATION COMMISSION, and THE METROPOLITAN DEVELOPMENT COMMISSION OF MARION COUNTY, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS INDIANAPOLIS HISTORIC PRESERVATION COMMISSION'S AND THE METROPOLITAN DEVELOPMENT COMMISSION OF MARION COUNTY'S**
**MOTION TO DISMISS**

RLUIPA claimants must have a property interest in the property at issue to have standing. St. Philip Neri Catholic Church, Indianapolis, Inc. (the "Parish") has no such interest. The Parish does not hold a real property interest in the property and has not operated on the property since 2019. The addition of Catholic Archdiocese of Indianapolis Properties, Inc. ("Archdiocese Properties") in the Parish's Amended Complaint does not resolve this issue because Archdiocese Properties is only a special purposes property holding entity, and there is no allegation that Archdiocese Properties is a religious entity in and of itself or engages in any religious exercise protected by RLUIPA or the U.S. Constitution, or Indiana law.

Moreover, the religious authority sought to be protected is not held by the Parish or Archdiocese Properties. According to the Amended Complaint, the Archbishop is the only party

who holds the authority to relegate Church property. And yet, the Archbishop is not a party to this lawsuit.

Holy Cross Church has been a historic and cultural landmark for over 130 years. The Indiana Code tasks the Indianapolis Historic Preservation Commission (the "IHPC") and the Metropolitan Development Commission of Marion County (the "MDC") with protecting such historic and cultural landmarks. *See* Indiana Code § 36-7-11-1, *et seq.* The Plaintiffs demand that the IHPC and MDC must disregard the duty imposed by the Indiana Code because the Parish does not want to deal with the expense of following Indiana law.   The various theories of law asserted by Plaintiffs do not require the IHPC and the MDC to favor Plaintiffs over other secular land uses. The Amended Complaint should be dismissed.

## I.    Facts

The Roman Catholic Church is a "hierarchical church," requiring "all its powers of governance to be held and exercised by the presiding Bishop or Archbishop of a particular Diocese or Archdiocese, subject to the religious doctrines and related internal laws of the Church, which are referred to as Canon law."[1] In or around 1895, the Archdiocese established Holy Cross Church.[2] Upon information and belief, around that same time, the Archdiocese purchased land located at 125 N. Oriental St., Indianapolis, Indiana 46202 (the "Subject Property") to construct a home for Catholic priests residing at Holy Cross.[3] The Archdiocese also founded a religious day school at the Subject Property.[4]

Between 1902 and 1948, four buildings were constructed on the Subject Property: the Holy Cross School Building (the "School Building"), the Church of the Holy Cross Building (the

---

[1] Amended Complaint, ¶ 14.
[2] *Id.* at ¶ 19.
[3] *Id.* at ¶ 20.
[4] *Id.* at ¶ 22.

"Church Building"), the Church Rectory, and Fatima Hall/Kelley Hall ("Kelley Hall").[5] Upon information and belief, sometime later, the Subject Property was transferred to Roman Catholic Archdiocese of Indianapolis Properties, Inc. Revocable Real Estate Trust Agreement (the "Trust").[6] Archdiocese Properties serves at the trustee of this Trust and oversees real estate for Catholic parishes within "the geographic scope of the Roman Catholic Archdiocese of Indianapolis."[7] The Parish is a beneficiary of this Trust.[8]

In 2015, the portico of the Church Building collapsed.[9] After reviewing the poor structure of the Church Building, the Archbishop directed the Archdiocese to stop using the using Subject Property for religious purposes.[10] Upon information and belief, the Parish has not used the Subject Property since the Archbishop's order. On February 24, 2019, the pastor of the Parish requested that the Church Building be relegated to profane but not sordid use.[11]  This process is known as "deconsecration."[12] The pastor was not able to relegate the Subject Property on his own accord because, according to the Amended Complaint, "Catholic Canon law imposes on the Archbishop" the duty of relegating properties and ensuring that all religious symbols are safeguarded.[13]  On May 11, 2019, the Archbishop, Charles Coleman Thompson, determined that the Subject Property should be relegated to a profane but not sordid use (the "Relegation Decree").[14] After the Relegation Decree, the Archdiocese removed religious fixtures from the

---

[5] *Id.* at ¶ 24.
[6] *Id.* at ¶ 5.
[7] *Id.* at ¶ 5.
[8] *Id.* at ¶ 5.
[9] *Id.* at ¶ 41.
[10] *Id.* at ¶ 42.
[11] *Id.* at ¶ 46.
[12] *Id.*
[13] *Id.* at ¶ 48.
[14] *Id.* at ¶ 47.

Church Building, including the stained glass windows.[15] The stained glass windows were not retained by the Parish but instead was sent to a Catholic Church in southern Indiana.[16]

While the Parish does not hold title to the Subject Property, in 2024, the Parish's current pastor, Father Jeffrey Dufresne, scheduled  a meeting with the leadership of the "Holy Cross Neighborhood Association" (the "Neighborhood Association") regarding the future of the Church Building and the Rectory.[17] At the meeting, Father Dufresne advised that he had determined that the Church Building and Rectory should be demolished.[18] The Amended Complaint does not allege that Father Dufresne, or the Parish, is afforded this unilateral right under Roman Catholic Canon law.[19] The Neighborhood Association disagreed with Father Dufresne's determination and started a petition to designate the Subject Property as a historic landmark.[20] Shortly thereafter, Indiana Landmarks, a nonprofit organization, filed an emergency petition with the Indianapolis Historic Preservation Commission (the "IHPC").[21]

The IHPC received the petition and directed its staff to draft the Historic Area Preservation Plan – 44 (the "Preservation Plan") to designate the School building, the Church Building, the Church Rectory, and Kelley Hall as historic structures.[22] On March 27, 2024, the IHPC held a hearing on the Preservation Plan.[23] Plaintiffs' counsel attended the hearing.[24] On April 17, 2024, the Metropolitan Development Commission of Marion County (the "MDC") held

---

[15] *Id.* at ¶ 52.
[16] *Id.*
[17] *Id.* at ¶ 67.
[18] *Id.*
[19] *See generally, id.*
[20] *Id.* at ¶ 69.
[21] *Id.* at ¶ 70.
[22] *Id.* at ¶ 75.
[23] *Id.* at ¶ 85.
[24] *Id.*

a hearing on whether to adopt the Preservation Plan as part of the Marion County Comprehensive Plan.[25] The MDC adopted the Preservation Plan on the same day.[26]

On or about August 27, 2025, Archdiocese Properties filed an application with the IHPC for the removal of the Subject Property from the Preservation Plan and simultaneously for the demolition of the Church Building and Rectory (the "Application").[27] The Amended Complaint does not allege that the Archbishop directed Archdiocese Properties to file the Application. Rather, Father Dufresne testified that "he determined that demolition of the structures was the appropriate choice."[28]

On October 1, 2025, the IHPC held a hearing on the Application.[29] Plaintiffs' counsel, Father Dufresne, and a representative from Arsee Engineering attended the hearing on behalf of the Plaintiffs.[30] The Archbishop did not attend despite making the relegation decree and controlling the governance and decisions of the Church.

The Indiana Code required the IHPC to make findings on whether the Application if granted or denied would (1) deny the owner of the site "reasonable use" of the property or "prevent reasonable economic return," (2) cause an "adverse economic impact" on owners of real estate abutting the historic district, and (3) "have an adverse impact on the unit's historic resources, and specifically whether it would result in the loss of a building, structure, or site classified as historic."[31] These findings required the IHPC to analyze the historic value of the property at issue, the property's meaning to the community at large, and whether demolition is the only "reasonable use" of the property.

---

[25] *Id.* at ¶ 86.
[26] *Id.*
[27] *Id.* at ¶¶ 94-97.
[28] *Id.* at ¶ 108.
[29] Amended Complaint, at ¶ 98.
[30] *Id.* at ¶ 105.
[31] Indiana Code § 36-7-11-23(c).

After providing Plaintiffs with the time permitted by the IHPC's rules to speak on their application, the IHPC heard public comment.[32] Public comment focused on the loss that would result if the historic buildings were removed and questioned whether there was no "economic use" of the property.[33] Many residents spoke to the historic value of the Subject Property and the cultural harm that would occur if the Church Building was demolished.[34] Other, residents referred to other religious properties that were converted to commercial purposes.[35]

IHPC commissioners faced a difficult task given Father Dufresne's position. Specifically, that the IHPC was required to disregard the factors imposed on them by statute because Father Dufresne had determined that demolition was the only viable option. Commissioner Bivens made clear, "[w]e have guidelines. We're not going to opine on Constitutional law or Canonical law, we're going to look at our guidelines."[36] The IHPC members did just that.

Commissioner Lear pointed to the Neighborhood Association's petition and the residents who testified at the hearing as evidence of the historical value of Subject Property.[37] Similarly, Commissioner Sivilich called the building a "valuable cultural heritage site."[38] Commissioner Keller questioned whether the Subject Property had truly lost all economic value.[39] While the Amended Complaint frames Commissioner Keller's comments as attempting to define "sordid," Commissioner Keller was merely trying to figure out whether there was truly no reasonable use of the Subject Property besides demolition.[40] Commissioner Bivens took a similar approach,

---

[32] *Id.* at ¶¶ 111-167.
[33] *Id.*
[34] *Id.* at ¶ 130-131.
[35] *Id.* at ¶¶ 116-117, 122, 125,
[36] *Id.* at ¶ 151.
[37] *Id.* at ¶ 134.
[38] *Id.* at ¶ 137.
[39] *Id.* at
[40] *Id.* at ¶ 149.

asking if there was anything the City could do to help revitalize the Subject Property so that it could be put towards a reasonable use without demolition.[41]

Ultimately, the IHPC denied the Application.[42] The IHPC's Findings of Fact followed Indiana Code requirements and found that "[t]he denial does not deprive the owner of all reasonable use and benefit of the property," and that "[a]pproval would have a substantial negative effect on the historic integrity of the area…. Demolition of the buildings erases the history and architecture of the site, for the neighborhood and the city."[43] These findings are consistent with the requirements of the Indiana Code.[44]

The Parish filed its complaint on December 30, 2025. A few weeks later, the Parish filed an Amended Complaint that included Archdiocese Properties as a plaintiff. Despite Roman Catholic law imposing the duty of relegation and deconsecration on the Archbishop, the Archbishop is not a plaintiff to this case.

## II.     Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure attacks the sufficiency of facts alleged in the complaint to state a claim as a matter of law. Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive the motion to dismiss, the complaint "must state enough facts that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Seal v. Richardson*, No. 1:16-cv-02743-WTL-DML, 2017 WL 1035932 (March 17, 2017) (S.D. Ind.), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). While a court considering a motion to dismiss must accept facts alleged in the complaint to be

---

[41] *Id.* at ¶¶ 151-152.
[42] *Id.* at ¶ 166.
[43] *Id.* at ¶ 168.
[44] *See* IC § 36-7-11-23(c).

true, the court is "not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

A motion to dismiss premised on a plaintiff's lack of statutory standing is evaluated under Rule 12(b)(6). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (distinguishing statutory standing from Article III standing, which is evaluated pursuant to Rule 12(b)(1)).

### III.    Argument

Archdiocese Properties and the Parish do not have statutory standing to bring an action under RLUIPA. The Archbishop is the only individual with the authority to deconsecrate a property. And yet, the Archbishop is not a party to this case.  RLUIPA claimants must have a real property interest in the subject property. 42 U.S.C. § 2000cc-5(5); *Taylor v. City of Gary*, 233 F. App'x 561, 562 (7th Cir. 2007). The Parish has not such interest. In fact, the Parish has not resided on or used the Subject Property for religious exercise since 2019.  Similarly, the Amended Complaint lacks any allegation that Archdiocese Properties ever exercised religion or acts as a religious entity. Therefore, Plaintiffs do not have standing to sue under RLUIPA.

Even beyond the issue of standing, Plaintiffs' claims fail as a matter of law. The Subject Property is a historic landmark that the IHPC and MDC have a legitimate government interest in protecting. *Penn Central Transportation Co. v. New York*, 438 U.S. 104, 129 (1978) ("States and cities may enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city."); *Berman v. Parker*, 348 U.S. 26, 33 (1954). The Indiana Code requires the IHPC to make findings on whether removal of the building would (1) deny the owner of the site "reasonable use" of the property or "prevent reasonable economic return," (2) cause an "adverse economic impact" on owners of real estate abutting the historic district, and (3) "have an adverse impact on the unit's historic resources, and specifically whether

it would result in the loss of a building, structure, or site classified as historic." IC § 36-7-11-23(c).

The various theories of law asserted by Plaintiffs do not exempt Plaintiffs from the application of this neutral law. *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) ("conditions—which are incidental to any high-density urban land use—do not amount to a substantial burden on religious exercise."); *Love Church v. City of Evanston*, 896 F.2d 1082, 1086 (7th Cir. 1990) ("Whatever specific difficulties [plaintiff church] claims to have encountered, they are the same ones that face all [land users]."). Further, the Amended Complaint fails to reference any similarly situated property that was treated differently under these regulations. *Islamic Center of Western Suburbs v. Cnty. of DuPage*, No. 12 C 6132, *6 (N.D. Ill. Dec. 18, 2012) (a plaintiff must "show that religious and secular land uses have been treated differently under an accepted zoning criterion, or that the government's application of a land use provision treats one religion differently than another."); *Barrington Cove Ltd. Partnership v. Rhode Island Housing and Mortg. Finance Corp.*, 246 F.3d 1, 10 (1st Cir. 2001) (dismissing Equal Protection Clause claim on Rule 12(b)(6) grounds).

Plaintiffs' Amended Complaint should be dismissed.

## A. Plaintiffs' RLUIPA claims must fail because Archdiocese Properties and the Parish are not proper parties.

### a. The Parish does not have statutory standing to bring an action under RLUIPA because it has no real property interest in the Subject Property.

RLUIPA provides that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on… religious exercise…" 42 U.S.C. § 2000cc(a)(1). A "land use regulation" claimant is defined as one who "has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or

option to acquire such interest." 42 U.S.C. § 2000cc-5(5). Accordingly, the Seventh Circuit has recognized that RLUIPA land-use claimants must have a "legally recognized property interest" in the land at issue. *Taylor v. City of Gary*, 233 F. App'x 561, 562 (7th Cir. 2007) (affirming dismissal of minister's RLUIPA claim because the minister lacked a "legally recognized property interest in [the church].").

Courts have repeatedly dismissed RLUIPA claimants on this basis. *See, e.g., Covenant Christian Ministries, Inc. v. City of Marietta*, 654 F.3d 1231, 1239 (11th Cir. 2011) (church's pastor dismissed as plaintiff from RLUIPA land use case where subject land was owned by church and not pastor); *Congregation Etz Chaim v. City of Los Angeles*, No. 10—1587, 2012 WL 11826032, at *3 (C.D. Cal. Apr. 17, 2012) (synagogue's congregants lacked ability to bring RLUIPA land use claim where subject land was owned by synagogue and not congregants); *see also Cambodian Buddhist Soc. of Connecticut, Inc. v. Planning and Zoning Com'n of Town of Newton*, 285 Conn. 381, 396 (Conn. 2008) (holding that the president of a religious organization lacked standing under RLUIPA because he lacked a "traditional property interest" in the regulated property).; *House of Prayer Ministries, Inc. v. Rush Cnty. Board of Zoning Appeals*, 91 N.E.3d 1053, 1063 (Ind. Ct. App. 2018) ("By its plain terms, RLUIPA may be raised only by a claimant who has a 'property interest in the regulated land.'").

Courts analyze the state law of the property at issue to determine whether a plaintiff has a "legally recognized property interest." *Omar Islamic Ctr. Inc. v. City of Meriden*, 633 F.Supp. 3d 600, 619 (D. Conn. 2022) citing *Muslim Cmty. Ass'n of Ann Arbor v. Pittsfield Charter Twp.*, No. 12-CV-10803, 2015 WL 1286813, at *7 (E.D. Mich. Mar. 20, 2015). The Amended Complaint claims that the Parish has an "equitable ownership interest" in the Subject Property because the Parish is a beneficiary of the Trust. Amended Complaint at ¶ 5. However, a review

of Indiana law confirms that the Parish does not have any real property interest in the Subject

Property.

The Indiana Code is directs that a beneficiary's interest in property is only a real property

interest "if, under the terms of the trust, the trustee is required at some time to distribute real

property from the trust estate to [the] beneficiary…." Ind. Code Ann. § 30-4-2-7. "In all other

cases the beneficiary's interest is personal property." *Id.* The Complaint does not allege that the

Trust contemplates the transfer of the Subject Property to the Parish. In fact, the Parish no longer

uses the Subject Property. Amended Complaint, ¶¶ 42-47. Therefore, the Parish does not have a

real property interest in the Subject Property and is not a claimant with standing under RLUIPA.

> **b. Archdiocese Properties Inc.'s allegations cannot sustain a RLUIPA nondiscrimination claim because Archdiocese Properties is not an "assembly" or "institution" under RLUIPA.**

RLUIPA prohibits a government from imposing or implementing "a land use regulation

that discriminates against any assembly or institution on the basis of religion or religious

denomination." 42 U.S.C. § 2000cc(b)(2). Circuit courts acknowledge that Congress did not

define the terms "assembly" or "institution" in the statute. *Lighthouse Inst. For Evangelism, Inc.*

*v. City of Long Branch*, 510 F.3d 253, fn. 29 (3d Cir. 2007) citing *Midrash Sephardi, Inc. v. Town*

*of Surfside*, 366 F.3d 1214, 1230 (11th Cir. 2004). Therefore, courts construe the terms "in

accordance with [their] ordinary or natural meaning." *Id.*  Courts have defined "assembly" as "a

company of persons gathered together for deliberation and legislation, worship, or

entertainment," and "institution" as "an established organization or corporation… especially of a

public character." *Id.*

While Archdiocese Properties may be an agent of a religious assembly or institution,

Archdiocese Properties is not itself a religious assembly or institution. Indeed, the Amended

Complaint does not allege that Archdiocese Properties engages in any exercise of religion or organizes individuals for the exercise of religion. *Id.* Rather, the Amended Complaint merely describes Archdiocese Properties as a special purpose real estate holding company. Amended Complaint, ¶¶ 6, 21. Accordingly, Archdiocese Properties, Inc.'s RLUIPA discrimination claim must be dismissed.

### c.   Archdiocese Properties, Inc.'s allegations cannot sustain a RLUIPA substantial burden claim because it does not engage in "religious exercise."

RLUIPA prohibits government imposition or implementation of a land use regulation in a manner that imposes "a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that the imposition of the burden on that person, assembly or institution (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc(a)(1). RLUIPA defines "religious exercise" as "any exercise of religion" including "the use, building, or conversion of real property for the purpose of religious exercise." 42 U.S.C. § 2000cc-5(7).  Notably, courts hold that the demolition and sale of a religious institution's property, even if undertaken to fund the institution's religious mission, does not constitute "religious exercise" protected by RLUIPA. *California-Nevada Annual Conference of the Methodist Church v. City and Cnty. of San Francisco*, 74 F.Supp.3d 1144, 1154 (N.D. Cal. 2014).

While the historic designation prohibits Archdiocese Properties from demolishing the Church Building without seeking and obtaining approval from the IHPC, the Amended Complaint lacks any allegation that *Archdiocese Properties* ever exercised religion or acts as a religious entity. *See generally,* Amended Complaint. Rather, the Church's "powers of governance [are] *held and exercised* by the presiding Bishop or Archbishop of a particular Diocese or

Archdiocese." Amended Complaint, ¶ 14 (emphasis added). Further, "Catholic Canon law imposes *on the Archbishop* specific obligations regarding the protection and reuse of religious symbols located in the interior or upon the exterior of the Church that are deconsecrated and relegated to profane but not sordid uses[.]" *Id.* at ¶ 48 (emphasis added). To that end, the Archbishop is the party who made the decision to relegate the Subject Property to "profane but not sordid uses." *Id.* at ¶ 47. And yet, the Archbishop and Archdiocese itself are not parties to this case.

The only action taken by Archdiocese Properties was applying for a demolition permit. *Id.* at ¶ 94. The Amended Complaint does not allege that Archdiocese Properties has any obligation under Catholic Canon law to demolish their building or that Archdiocese Properties is a religious entity. Therefore, Defendants could not have placed a substantial burden on Archdiocese Properties' "religious exercises," because Archdiocese Properties has not engaged in any religious exercise. The fourth count of Plaintiffs' Amended Complaint should be dismissed.

**B. Even if the Plaintiffs are the proper parties, their allegations fail to state claims upon which relief can be granted.**

### a. Substantial Burden

The Indiana Code requires the IHPC to make findings on whether removal of the building would (1) deny the owner of the site "reasonable use" of the property or "prevent reasonable economic return," (2) cause an "adverse economic impact" on owners of real estate abutting the historic district, and (3) "have an adverse impact on the unit's historic resources, and specifically whether it would result in the loss of a building, structure, or site classified as historic." IC § 36-7-11-23(c). Plaintiffs essentially claim that RLUIPA requires Defendants to disregard these requirements. This argument is incorrect as a matter of law.

RLUIPA provides that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on… religious exercise…" 42 U.S.C. § 2000cc(a)(1). Importantly, the primary sponsors of RLUIPA placed a statement concerning the statute in the Congressional Record on the day it was passed by Congress to clarify its intent:

> [RLUIPA] does not provide religious institutions with immunity from land use regulations, nor does it relieve religious institutions from applying for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations, where available without discrimination or unfair delay.

Joint Statement of Sen. Hatch and Sen. Kennedy on S. 2869, 106th Cong. 2d. sess. (2000) 146 Cong. Rec. S7776.Consistent with this purpose, the Seventh Circuit has consistently rejected substantial burden claims where regulations make a proposed use more difficult but are nonetheless applied equally to religious and secular land uses. *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) ("conditions—which are incidental to any high-density urban land use—do not amount to a substantial burden on religious exercise."); *Love Church v. City of Evanston*, 896 F.2d 1082, 1086 (7th Cir. 1990) ("Whatever specific difficulties [plaintiff church] claims to have encountered, they are the same ones that face all [land users]."). Similarly, there is no substantial burden placed on an individual's free exercise of religion when a law or policy merely operates to make the practice of the entity's religious beliefs more expensive.  *Civil Liberties*, at 762 citing *Stuart Circle Parish v. Board of Zoning Appeals of Richmond*, 946 F.Supp. 1225, 1337 (E.D. Va. 1996). Finally, courts have held that a landmark designation does not constitute a substantial burden just because the religious entity cannot do "exactly what it wants with the building." *Trinity Evangelical Lutheran Church v. City of Peoria, Ill.*, 2009 WL 10711703, *4 (C.D. Ill. Mar. 31, 2009) (rejecting substantial burden claim after the Church plaintiff was prevented from demolishing landmark designated building).

The IHPC is required to determine whether demolition would have an adverse impact on the historic and cultural value of the City. IC § 36-7-11-23(c). Numerous residents spoke about the historical value of the Subject Property in the hearing on Archdiocese Properties Inc.'s demolition application. Amended Complaint, ¶ 164 (pointing out that the "entire neighborhood" supports the Subject Property). The historic and cultural value of the Subject Property is further evidenced by the petition that immediately gained support after Father Dufresne unilaterally determined that demolition was required. *Id.* at ¶ 70.

The IHPC is also required to determine whether there is any "reasonable use" of the property besides demolition. IC § 36-7-11-23(c). The Amended Complaint does not allege that the Archbishop, or any member of the Archdiocese besides Father Dufresne, believes that demolition is the only way to deconsecrate the Subject Property. The Archbishop relegated the Subject Property in 2019, six years before Father Dufresne unilaterally decided to demolish the Church Building and the Rectory. Amended Complaint, ¶ 47. The Commissioners repeatedly tried to work with Father Dufresne to come up with a solution that did not involve demolition of the two structures. Amended Complaint, ¶¶ 142-152. Father Dufresne refused to explore any options, and, despite not having the authority to determine whether a property should be relegated, remained steadfast in his belief that demolition is the only appropriate solution.

Further, Plaintiffs admit that the expense of maintaining the Subject Property is the sole reason for the demolition. Amended Complaint, ¶¶ 55, 68. While the guidelines may impose additional expense on Plaintiffs, increased expense alone is insufficient to pose a RLUIPA "substantial burden." *Civil Liberties*, at 762 citing *Stuart Circle Parish v. Board of Zoning Appeals of Richmond*, 946 F.Supp. 1225, 1337 (E.D. Va. 1996).

RLUIPA does not require the IHPC to throw out the guidelines that the Indiana Code requires, nor does RLUIPA create a religious exemption from the generally applicable historic preservation laws. The facts alleged here do not add up, as a matter of law, to a RLUIPA substantial burden. Accordingly, Plaintiffs' substantial burden claim should be dismissed.

### b. Nondiscrimination

RLUIPA prohibits a government from imposing or implementing "a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. § 2000cc(b)(2). Courts analyzing a claim under this provision "look to constitutional equal protection precedent for guidance. *Society of American Bosnians and Herzegovinians v. City of Des Plaines*, Nos. 13 C 6594, 15 C 8628, 2017 WL 748528, *11 (N.D. Ill. Feb. 26, 2017). Accordingly, a plaintiff must "show that religious and secular land uses have been treated differently under an accepted zoning criterion, or that the government's application of a land use provision treats one religion differently than another." *Islamic Center of Western Suburbs v. Cnty. of DuPage*, No. 12 C 6132, *6 (N.D. Ill. Dec. 18, 2012) (citations omitted).

The Amended Complaint does not allege that Defendants treated Plaintiffs differently than other secular land uses. In fact, the Amended Complaint does not reference a single other application to the IHPC. Accordingly, Plaintiffs' discrimination claim under RLUIPA should be dismissed.

### C. Constitutional Claims

### a. Plaintiffs' free exercise claims should be dismissed for the same reasons that their substantial burden claims should be dismissed.

The Free Exercise Clause of the First Amendment, provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." U.S. Const. Amend. I. Courts evaluate free exercise claims under the First Amendment using the same

standard applied to substantial burden claims under RLUIPA. *Society of American Bosnians and Herzegovinians v. City of Des Plaines*, 2017 WL 748528, *12 (N.D. Ill. Feb. 26, 2017) citing *Vision Church v. Village of Long Grove*, 468 F.3d 978, 996 (7th Cir. 2006).

As stated above, the IHPC's decision was based on the requirements of the Indiana Code. *See supra* Section III(B)(a). Plaintiffs have not alleged facts that any current religious exercise has been infringed by the IHPC or MDC; expense alone, resulting from an historic preservation law applied to secular and religious entities alike, is not an impairment of religious exercise as a matter of law. *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003); *Love Church v. City of Evanston*, 896 F.2d 1082, 1086 (7th Cir. 1990); *Stuart Circle Parish v. Board of Zoning Appeals of Richmond*, 946 F.Supp. 1225, 1337 (E.D. Va. 1996).

In *Trinity Evangelical Lutheran Church v. City of Peoria,* a landmark designation prevented a church from demolishing a building. 2009 WL 10711703, *1. The church wanted to replace the building with a new "Family Life Center." *Id.* After the city denied the church's certificate of appropriateness, the church sued, alleging that the ordinance substantially burdened their religious exercise. *Id.* at *2. The district court granted the city's motion for summary judgment, reasoning that the landmark designation "in no way prevents the Church from continuing its religious ministries." *Id.* at *3. The court further reasoned, "[w]hile this burden would add a financial cost to the church… and limits the options the church has for expansion, the ordinance does not place a substantial burden on the church's activities." *Id.*

The same is true here. While demolition may be a cheaper option for Plaintiffs, there are other methods of deconsecrating the Church Building that, while more expensive, remain available to Plaintiffs. Accordingly, their Free Exercise claims should also be dismissed.

**b. Plaintiffs' equal protection claim should be dismissed because it does not allege instances of similarly situated parties being treated differently on the basis of religion.**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To prevail on an equal protection claim, the plaintiff must show that the government entity "intentionally treated it differently than other similarly-situated parties and that no rational basis existed for the differential treatment." *Northwestern University v. City of Evanston*, No. 00 C 7309, 2002 WL 31027981, *4 (Sep. 11, 2002) citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The Amended Complaint does not claim that Defendants treated Plaintiffs differently than other similarly situated parties. *See generally,* Amended Complaint. A claim under the Equal Protection Clause requires a plaintiff to plead the existence of a similarly situated comparator and to do so with sufficient particularity to determine whether the comparator and the plaintiff are similarly situated in all material respects. *Barrington Cove Ltd. Partnership v. Rhode Island Housing and Mortg. Finance Corp.*, 246 F.3d 1, 10 (1st Cir. 2001) (dismissing Equal Protection Clause claim on Rule 12(b)(6) grounds).

The Parish and Archdiocese Properties do not assert any comparator in alleging that their equal protection rights were violated. Accordingly, they have failed to state a claim upon which relief can be granted.

**c. Plaintiffs' Establishment Clause claim should be dismissed because the allegations do not state a fact pattern of religious coercion.**

The First Amendment's Establishment Clause, applicable to state action by incorporation through the Fourteenth Amendment, states that "Congress shall make no law respecting an

establishment of religion." U.S. Const. Amend. I. The Supreme Court's decision in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022) instructed that the Establishment Clause must be interpreted by "reference to historical practices and understandings." *Id.* at 535.  In *Kennedy*, the Court held that a pattern of religious coercion violates the Establishment Clause because religious coercion "was among the foremost hallmarks of religious establishments the framers sought to prohibit." *Id.* at 537. The Court also cited a group of cases that have dealt with the Establishment Clause in historical terms and suggested that their approach should inform Establishment Clause analyses going forward. *Id.* While not exactly on point, the *Bremerton* Court's citation to *American Legion v. American Humanist Ass'n*, 588 U.S. 29 (2019) provides some guidance.

In that case, the Court held that the placement of the Bladensburg Peace Cross on public grounds did not constitute a violation of the Establishment Clause. The *American Legion* Court emphasized that the religious aspects of "longstanding monuments" is obscured over time. *Id.* at 54-55. The Court went on to reason that "[w]ith sufficient time, religiously expressive monuments, symbols, and practices can become embedded features of a community's landscape and identity. The community may come to value them without necessarily embracing their religious roots." *Id.* at 55. The Court went on to reason that while the Bladensburg Cross began with a Christian meaning, that meaning evolved over time and now "speaks as well of the community that erected the monument nearly a century ago and has maintained it ever since." *Id.* at 64.

A similar fact pattern is at issue here. The historic value of the Church Building and Rectory are what led the IHPC to deny the Application, not animus or entanglement with the Roman Catholic religion. The facts alleged do not indicate religious coercion of any kind.

Accordingly, Plaintiffs' Establishment Clause claim fails as a matter of law and should be dismissed.

**D. Plaintiffs' claim under the Indiana Religious Freedom Restoration Act fares no better than Plaintiffs' claims under RLUIPA and therefore should be dismissed.**

Indiana's RFRA prohibits "a governmental entity" from "substantially burden[ing] a person's exercise of religion, even if the burden results from a rule of general applicability." I.C. § 34–13–9–8(a). Indiana courts provide the same analysis under this test as applied under the RLUIPA substantial burden test. *House of Prayer Ministries, Inc. v. Rush Cnty. Bd. of Zoning Appeals*, 91 N.E.3d 1053, 1064 (Ind. Ct. App. 2018).

As stated above, the IHPC's decision was based on the requirements of the Indiana Code. *See supra* Section III(B)(a). Plaintiffs either point solely to expense of maintaining the Church, which is insufficient as a matter of law to constitute a "substantial burden" on religious exercise, or Plaintiff does not exercise religion at all, in the case of Archdiocese Properties, Inc. Because Plaintiffs' claims fail under RLUIPA's substantial burden test, their Free Exercise claims should also be dismissed. *See Id.*

**IV.    Conclusion**

One Plaintiff—Archdiocese Properties, Inc.—is a special purpose real estate holding entity for which the Amended Complaint is completely devoid of allegations of religious exercise. Without engaging in religious exercise, it cannot be substantially burdened in such exercise under RLUIPA. The other entity, the Parish, has no real property interest at stake, and so it is not a claimant with standing under RLUIPA. The Plaintiffs' constitutional claims also fail under the facts alleged, because they have not identified similarly situated comparators, any cognizable infringement on their religious exercise (to the extent such exercise is even alleged), or any religious coercion by Defendants.

Plaintiffs' Amended Complaint should be dismissed

FBT GIBBONS LLP

By:  */s/ Anthony W. Overholt*

    Anthony W. Overholt #16481-49
    Amy Stewart Johnson, #16257-49
    111 Monument Circle, Suite 4500
    P.O. Box 44961
    Indianapolis, IN  46244-0961
    Telephone:    (317) 237-3800
    Facsimile:    (317) 237-3900
    Email:    aoverholt@fbtgibbons.com
        asjohnson@fbtgibbons.com

*Attorneys for Defendants*
*Indianapolis Historic Preservation*
*Commission and*
*The Metropolitan Development Commission*
*of Marion County*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2026, a copy of the foregoing document was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Anthony W. Overholt*

LR02314.0754710   4906-6434-2928v8