**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| ST. PHILIP NERI CATHOLIC CHURCH, INDIANAPOLIS, INC., and ROMAN CATHOLIC ARCHDIOCESE OF INDIANAPOLIS PROPERTIES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>INDIANAPOLIS HISTORIC PRESERVATION COMMISSION, and THE METROPOLITAN DEVELOPMENT COMMISSION OF MARION COUNTY,<br><br>Defendants. | Case No. 1:25-cv-02616-MPB-TAB |

**PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DATED AUGUST 27, 2026**

Plaintiffs St. Philip Neri Catholic Church, Indianapolis, Inc. ("St. Philip Neri") and Roman Catholic Archdiocese of Indianapolis Properties, Inc., hereby object to the Court's August 27, 2026 Order ("Order," ECF No. 66) quashing the subpoena (the "Subpoena", Declaration of Roman P. Storzer (ECF No. 69) and **Exhibit A** (ECF No. 69-1)) that Plaintiffs issued on non-party Historic Landmarks Foundation of Indiana, Inc. ("HLFI," also known as "Indiana Landmarks"). Plaintiffs assert that the decision to quash the Subpoena is both contrary to law and clearly erroneous. First, the Order is clearly erroneous because it overlooks the fact that Requests Numbers 1 through 13 are already limited in scope to the Subject Property. Second, the Order is contrary to law because the actions and motivation behind HLFI's direct involvement in the landmarking of St. Philip Neri's church building are highly relevant under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977), with respect to

Plaintiffs' claims under the Equal Protection Clause of the Fourteenth Amendment (Count III), U.S. Const. amend. XIV, § 1, and the Nondiscrimination Provision of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc(b)(2) ("RLUIPA") (Count V).

## I. Factual and Procedural Background

Plaintiffs, a Roman Catholic parish and a religious entity that holds the parish's property in trust, brought this civil rights action against Defendants after they landmarked and denied a demolition permit for the parish's vacant and significantly deteriorated building. ECF No. 31 at 1. Plaintiffs challenge Defendants' actions under RLUIPA, federal constitutional provisions, and Indiana law, alleging that Defendants' actions significantly burden their mission and interfere with its disposition of sacred objects, and that forcing it to sell the sacred structure would impose unacceptable risk upon the Plaintiffs in violation of their religious beliefs–guided by Catholic canon law–of the deconsecrated church building falling into religiously improper or "sordid" use. *Id.*; ECF No. 16 ¶¶ 190-217. On May 1, 2026, this Court denied Defendants' Motion to Dismiss. ECF No. 47. Among the claims that the Court permitted to go forward were Plaintiffs' RLUIPA Nondiscrimination and Equal Protection Claims. *Id.* at 10. This Court underscored that these claims "require Plaintiffs to prove that Defendants, motivated by discriminatory intent, discriminated against them on the basis of their religion." *Id.* at 7 (citations omitted).

HLFI was a key player in the events that gave rise to Plaintiffs' claims. When Father Dufresne, the pastor of Plaintiff St. Philip Neri informed the Holy Cross Neighborhood Association ("HCNA") of his intention to seek demolition of the Church of the Holy Cross Church Building and Rectory, the HCNA started a petition to designate the Subject Property as a historic landmark. ECF No. 16 ¶¶ 67-68. It was HLFI that then filed an emergency petition with the Indianapolis Historic Preservation Commission ("IHPC") to landmark the Subject Property in an

effort to prevent demolition. *Id.* ¶¶ 71-72. In direct response to HLFI's emergency petition, the IHPC prepared a Preservation Plan, which the Metropolitan Development Commission ("MDC") adopted. *Id.* ¶¶ 73, 75, 82, 86. The IHPC then refused to grant Plaintiffs' demolition application. *Id.* ¶¶ 93-94, 166.

Plaintiffs seek relevant information from the entity whose emergency petition led directly to their injuries, including the purported justifications and motivations for such designation. Plaintiffs issued a Subpoena on non-party HLFI on June 8, 2026 seeking documents and communications related to the Petition for Historic Designation, the Demolition Application, the Preservation Plan, the Petition for Removal of the Historic Designation, and the Subject Property. *See* ECF No. 69-1 ¶¶ 1-13; ECF No. 69 ¶ 3; HLFI accepted service on June 18, 2026 and objected on July 2, 2026. *Id.* ¶¶ 4-5 and **Exhibits B and C** (ECF Nos. 69-2 and 69-3). Counsel held a telephonic meet-and-confer regarding the Subpoena on July 29, 2026. ECF No. 69 ¶ 6. Plaintiffs and HLFI appeared by counsel on August 25, 2026 for a telephonic status conference. *Id.* ¶ 7. On August 27, 2026, the Hon. Tim A. Baker quashed the Subpoena. *See* ECF No. 66, ECF No. 69 ¶ 8 and **Exhibit D** (ECF No. 69-4). The Court also stated that Plaintiffs "may serve a more narrowly tailored subpoena on Landmarks." ECF No. 66 at 3.

## II. <u>Standard of Review</u>

A district court "must consider timely objections and modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). A finding is clearly erroneous "when, after considering the entire record, the reviewing court has been definitely and firmly convinced that a mistake has been committed." *Bustillo v. Harvey*, No. 2:13-CV-00120-JMS-WGS, 2014 WL 2968680, at *2 (S.D. Ind. July 2, 2014) (internal citations omitted); *Weeks v. Samsung Heavy Inds. Co.*, 126 F.3d 926, 943 (7th Cir. 1997) (same). Clear error is a deferential standard of review. *See Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006).

An order is contrary to law when it "fails to apply or misapplies the relevant statutes, case law, or rules or procedure." *Pain Ctr. of SE Ind., LLC V. Origin Healthcare Solutions LLC*, No. 1:13-CV-00133-RLY-DKL, 2014 WL 958464, at *3 (S.D. Ind. Mar. 12, 2014).

## III. Argument

### A. The Order is Clearly Erroneous Regarding the Scope of Request Numbers 1 - 13.

The Order is clearly erroneous in finding that the subpoena is overbroad and lacks reasonable particularity. ECF No. 66 at 2. First, Plaintiffs re-iterate that they are "willing to limit the temporal scope of the subpoena to documents in Landmarks' possession from 2017 to present, and to limit the scope of Requests Nos. 14 through 17 to documents relating to the [S]ubject [P]roperty." ECF No. 66 at 2. Second, the Order overlooks the fact that Requests Nos. 1 through 13 are already limited in scope to the Subject Property. While the Order cites the "21 Definitions" as alleged evidence of overbreadth and lack of reasonable particularity, *id*., these very definitions limit and define the scope of Requests Numbers 1 through 13.

Request Number 1 seeks "all documents and communications related to the Petition for Historic Designation." *See* ECF No. 69-1 at 6. The "Definitions" section defines the "Petition for Historic Designation" as the emergency petition for the Subject Property. *Id*. at 5. Request Number 2 "seeks all documents and communications related to the "Demolition Application." *Id*. at 6. The "Definitions" section defines the "Demolition Application" as the application to demolish the Subject Property. *Id*. at 3. Request Number 3 seeks "all documents and communications related to the Preservation Plan." *Id*. at 6. The "Definitions" section defines the "Preservation Plan" as the Preservation Plan for the Subject Property. *Id*. at 5. Request Number 4 seeks "all documents and communications related to the Petition for Removal." *Id*. at 6. The "Definitions" section defines the "Petition for Removal" as the petition to remove the historic

designation from the Subject Property. *Id*. at 5. Requests Numbers 5 through 13 are similarly limited in scope to the Subject Property through the use of defined terms including "Subject Property" itself, Preservation Plan, and Demolition Application. *Id*. at 6-7. As such, Plaintiffs seek an order to enforce the Subpoena for Requests Numbers 1 through 13. Plaintiffs further seek an order to enforce the modified Requests Numbers 14 through 17, which limit the scope to the Subject Property.[1] For all requests, Plaintiffs state that the proper temporal scope is from 2017 to the present.

B. The Order is Contrary is Law because HLFI's Actions and Motivations Are Relevant Under the Applicable *Arlington Heights* Analysis.

The analysis of Plaintiffs' Equal Protection Clause and RLUIPA Nondiscrimination claims requires a "sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights*, 429 U.S. at 266; ECF No. 16 ¶¶ 114-121, 198-202, 208-211. "Relevant evidence includes, among other things, the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, . . . ." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540 (1993).

As the Order states, the intent of the governmental decisionmakers is relevant under *Arlington Heights*. *See* ECF No. 66 at 2. However, Plaintiffs respectfully submit that the Order errs in holding that facts concerning the motivations behind HLFI's actions are not relevant. *Id*. Both governmental intent and private bias are relevant because both the Fourteenth Amendment

---

[1] Plaintiffs request the following modified language for Request No. 14: "Documents relating to any file You maintain relating to a request for a Certificate of Appropriateness to the IHPC for the Subject Property."; for Request No. 15: "Documents relating to any file You maintain relating to a request for a Certificate of Authorization to the IHPC for the Subject Property"; for Request No. 16: "Documents related to any emergency petition filed with the IHPC for the Subject Property"; for Request No. 17 "Documents related to any petition or request for historic designation filed with the IHPC for the Subject Property."

and RLUIPA's Nondiscrimination provision forbid the government from "ratif[ying]" or "giv[ing] effect" to private biases and discriminatory acts. *See Palmore v. Sidoti,* 466 U.S. 429, 433 (1984) ("Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect."); *Dunn v. Washington Cnty. Hosp.*, 429 F.3d 689, 694 (7th Cir. 2005) (Under the Equal Protection Clause, "[w]hen the State ratifies the discriminatory acts of a private party, it is discriminating, period."); *see also LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995) (discriminatory motivation can be imputed to governmental decision-makers if they were knowingly responsive to community animus against a protected group); *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty*., 915 F.3d 256, 265 (4th Cir. 2019) (in RLUIPA case, neighbors' biased remarks are "part of the sequence that lead to the challenged decision" and relevant under *Arlington Heights*); *United States v. Yonkers Bd. of Educ*., 837 F.2d 1181, 1224 (2d Cir. 1987) ("[A] governmental body may not escape liability under the Equal Protection Clause merely because its discriminatory action was undertaken in response to the desires of a majority of its citizens."); *Al Falah Ctr. v. Twp. of Bridgewater*, No. CV 11-2397 (MAS) (LHG), 2013 WL 12322637, at *7 (D.N.J. Sept. 30, 2013) (in RLUIPA case, holding that anti-Muslim "animus of the residents" is relevant in assessing whether government decisionmakers possess discriminatory intent); *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 580 (2d Cir. 2003) ("the history of the hostility of neighborhood residents" is relevant under *Arlington Heights*), *superseded by regulation on other grounds*.

As such, Plaintiffs should be permitted to obtain evidence regarding the history of the hostility of HLFI and their coordination with neighborhood groups such as Historic Urban Neighborhoods of Indianapolis ("HUNI") and the Holy Cross Neighborhood Association ("HCNA"). Relevant evidence from private actors includes HLFI. Examples of the type of

evidence Plaintiffs expect to uncover in the subpoena quashed by the Magistrate Judge is already in the record. The Vice President of HLFI, Mark Dollasse, testified on behalf of HLFI at the October 1, 2025 IHPC hearing on the demolition application. ECF No. 16 ¶¶ 98, 114-121, giving his business address and offering it as, "[a] great example of a historic church building that has been adaptively reused for other purposes." *Id.* ¶ 114. The HLFI campus is located in a former Methodist Church, a church unrelated to the Roman Catholic Church and its Canon law, and the repurposing of which is subject to entirely separate theological requirements. *Id.* ¶ 115. The HLFI representative attempted to cast doubt on the sincerity of Father Dufresne's interpretation of Roman Catholic Canon law and again invited the IHPC to weigh his layman's competing interpretation, telling the IHPC that, "I fully respect, and I want to make sure this is really clear, I fully respect the values and the belief system of Father Dufresne and the Catholic Church and the decisions that they feel like they need to make. And I guess those would be further reinforced if, as [the chair of the Holy Cross Land Use Committee] just pointed out, that we didn't know of other examples in the Indianapolis Archdiocese that they had allowed for the use of other Catholic churches that closed and/or marketed them for sale." *Id.* ¶ 116. He then gave two examples of other Catholic churches as support for his argument. *Id.* ¶¶ 117-120. The HLFI representative then stated that, "So, I guess I need some convincing as to why that can't work in the case of Holy Cross," before ultimately asserting that Indiana Landmarks was "open to dialogue" with the Archdiocese to determine the use of the Church Building. *Id.* ¶ 121. Given HLFI's extensive involvement and controlling precedent, the motivation behind their actions is relevant *in addition to* the government's own intent, especially as Plaintiffs allege that they are intertwined due to close coordination. *See* ECF No. 69 ¶ 9(a) and **Exhibit E** (ECF No. 69-5). ("Our committee has reviewed this case in detail and has been working closely with the Indianapolis Historic

Preservation Commission and Indiana Landmarks on this matter.”). This is the type of coordination evidence that the Subpoena seeks, as they argued in the conference before the Magistrate Judge.

As another example of close coordination evidence, the president of HUNI stated that “When this issue [of potential demolition] came up, months ago, Landmarks bestowed a special historic designation to Holy Cross, which stopped the demolition proceedings.” ECF No. 69 ¶ 9(b) and **Exhibit F** (ECF No. 69-6). Another HUNI member responded that “[t]he special designation was issued by IHPC to give it legal teeth[,]” with “it” presumably referring to the Landmarks designation. *Id.* In other words, the IHPC’s actions “directly or indirectly, g[a]ve” HLFI’s “private biases” “effect . . . .” *Palmore,* 466 U.S. at 433.

Additionally, Plaintiffs seek evidence to demonstrate that HLFI’s actions are a central part of the “series of events leading to the enactment,” which are relevant under *Arlington Heights*. *See* ECF No. 69 ¶ 9(d) and **Exhibit G**, INDY_0000583 (ECF No. 69-7). The IHPC Commissioner sent a “MEMORANDUM” recommending historic designation with a “Timeline” that states:

> 2017-2019 (approx.) Indiana Landmarks meets Holy Cross Church board members and Pastor Jeffrey DuFresne to discuss the future of Holy Cross. Indiana Landmarks has also requested to meet with the Archdiocese Director of Management Services . . . over the past several years with no response. 2019-2020 Indiana Landmarks places Holy Cross on its 10 Most Endangered List in both 2019 and 2020.

*Id*. This email demonstrates the type of evidence Plaintiffs seek, showing that governmental decisionmakers were responsive to HLFI’s actions from 2017 through 2019, even though HLFI may not have “submitted” their communications from this time period to the government. However, the Order limits Plaintiffs to obtaining only “documents that Landmarks submitted to Defendants,” which would exclude the so-called “10 Most Endangered Lists” and communications from 2017 to 2019 if HLFI did not “submit” them to the IHPC and MDC. *See* ECF No. 66 at 3.

A document does not need to have been "submitted" to the government in order to sway decisionmakers, especially when HLFI was leading a public influence campaign to prevent demolition and cast doubt on the sincerity of Plaintiffs' sincere Catholic beliefs. For example, HLFI's President Marsh Davis met with the IHPC Administrator on March 14, 2024 "about the potential demolition," which presented another opportunity to sway the decisionmakers without "submitting" documents. *See* Exh. G, INDY_0000583 (ECF No. 69-7).

Furthermore, a HLFI employee provided feedback about HUNI's draft letter in opposition to demolition and stated that "brewery reuse is something that the Archdiocese would actively not want to see (even if we see it as a plus). It might be strategic to remove that example – or, strategic to intentionally keep it in." *See* ECF No. 69 ¶ 9(e) and **Exhibit H**, HUNI 00236 (ECF No. 69-8). The government again was responsive to this private bias because when brewery reuse was mentioned at the IHPC hearing, Commissioner Keller stated "The Brewery? Somebody better notify the Trappists" and the audience laughed and cheered. *See* ECF No. 16 ¶¶ 143-44. This is yet another example of why limiting the Subpoena to documents "submitted" to the government is too narrow and excludes relevant evidence.

HLFI's evidence is relevant under *Arlington Heights* as part of the historical background and series of events to which the government was responsive when it "ratifie[d]" HLFI's actions. *Dunn*, 429 F.3d at 694. As such, Plaintiffs first respectfully request that the Court grant Plaintiffs' Objections and vacate the Order quashing the Subpoena. Plaintiffs further seek an order to enforce the Subpoena with the modifications that Plaintiffs originally proposed at the conference with the Hon. Tim A. Baker.[2]

---

[2] For all Requests, Plaintiffs state that the proper temporal scope is from 2017 to the present. For Requests Nos. 14 through 17, Plaintiffs seek the following modifications which limit the scope to the Subject Property. Plaintiffs request the following modified language for Request No. 14:

DATE: September 10, 2026

Respectfully submitted,

/s/ Michael A. Swift
Michael A. Swift (17779-49)
MAGINOT, MOORE & BECK LLP
150 West Market St., Suite 800
Indianapolis, IN 46204
*vice*)
Tel: (317) 644-8323
maswift@maginot.com

/s/ Roman P. Storzer
Roman P. Storzer (admitted *pro hac vice*)
Eric W. Treene (admitted *pro hac vice*)
Sieglinde K. Rath (admitted *pro hac vice*)
Margaret C. Valentin (admitted *pro hac*

STORZER & ASSOCIATES, P.C.
1025 Connecticut Ave NW, Suite 1000
Washington, D.C. 20036
Tel: (202) 857-9766
Facsimile: (202) 315-3996
storzer@storzerlaw.com
treene@storzerlaw.com
rath@storzerlaw.com
valentin@storzerlaw.com

*Attorneys for Plaintiffs*

---

"Documents relating to any file You maintain relating to a request for a Certificate of Appropriateness to the IHPC for the Subject Property."; for Request No. 15: "Documents relating to any file You maintain relating to a request for a Certificate of Authorization to the IHPC for the Subject Property"; for Request No. 16: "Documents related to any emergency petition filed with the IHPC for the Subject Property"; for Request No. 17 "Documents related to any petition or request for historic designation filed with the IHPC for the Subject Property."

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2026, a copy of the foregoing Plaintiffs' Objections to Magistrate Judge's Order, Declaration of Roman P. Storzer in Support of Plaintiffs' Objections to Magistrate Judge's Order Dated August 27, 2026, and Supporting Exhibits A-H, were filed electronically and notice of this filing will be sent by the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ Michael A. Swift
Michael A. Swift
MAGINOT, MOORE & BECK LLP
150 West Market St., Suite 800
Indianapolis, IN 46204
Tel: (317) 644-8323

*Attorney for Plaintiffs*